**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JAMES TREY NELSON,

                                        Petitioner,

            - v -                                     Civ. No. 9:04-CV-564
                                                              (LEK/RFT)

JOSEPH SMITH, *Warden*;
NEW YORK STATE ATTORNEY GENERAL,

                                        Respondents.

**APPEARANCES:**                          **OF COUNSEL:**

JAMES TREY NELSON
Petitioner, *Pro Se*
47022-053
USP Victorville
U.S. Penitentiary
P.O. Box 5500
Adelanto, CA 92301

ANDREW M. CUOMO                           MICHAEL G. McCARTIN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Respondents
The Capitol
Albany, N.Y. 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

On August 15, 2001*, pro se* Petitioner James Trey Nelson was convicted of assault in the

first degree, assault in the second degree, criminal possession of a weapon in the third degree, and

promoting prison contraband.  Trial Tr., Aug. 15, 2001 at pp. 683-85.  On October 10, 2001,

Petitioner was sentenced to twenty years incarceration for the first degree assault conviction and

lesser concurrent terms for the remaining convictions.  Sentencing Tr., Oct. 10, 2001 at p 13.

Petitioner now bring a Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the grounds that he was denied both the right to counsel of his choice and effective assistance of counsel under the Sixth Amendment to the United States Constitution.  Dkt. No. 1, Pet. at ¶ 12.  For the reasons that follow, it is recommended that the Petition be **denied**.

## I.  BACKGROUND

The following facts were found by the New York State appellate court:

> In January 2001, defendant was an inmate at the Albany County Correctional Facility.  During an altercation involving several inmates, defendant allegedly cut the victim's arm with a razor blade.  Correction officers arriving at the scene saw defendant with his hands in the back of his pants.  The facility's body orifice security system subsequently detected that defendant had a piece of metal in the area of his buttocks and a strip search revealed grease on his underwear.  After obtaining a search warrant, police officers transported defendant to the hospital, where X rays were taken revealing that defendant had a razor blade concealed in his rectum.  Defendant eventually removed the razor blade and turned it over to authorities.

*People v. Nelson*, 1 A.D.3d 796 (N.Y. App. Div. 3d Dep't 2003).

Upon the commencement of his trial, Petitioner asked the court to adjourn the proceeding so that he could retain a different attorney.  Trial Tr. at pp. 6-8.  In support of his request, Petitioner stated that he was not notified of the trial until a week before it began, and that he had just received discovery materials.  *Id*.  In addition, he stated that due to the restrictions imposed at the federal prison in which he resided, he was not allowed to communicate by phone with his appointed trial counsel unless his counsel initiated the call.  *Id*.  Finally, Petitioner told the trial court that his family was present in the courtroom and was prepared to immediately retain an attorney on his behalf.  *Id*.  The court denied Petitioner's request for a postponement and the trial commenced.  *Id*. at p. 9.

At trial, Sergeant (Sgt.) Gecewiz testified that following the altercation, he asked Petitioner what the altercation was about; Petitioner responded that "they went after one of my dogs."  *Id*. at pp. 517-18.  On cross-examination, Sgt. Gecewiz testified that he made a written report of

Petitioner's alleged oral admission and provided it to the investigators of Albany County Correctional Facility.  *Id*. at pp. 517-18.  Petitioner's trial counsel requested production of Gecewiz's written report, but the prosecution stated that they did not have the report.  *Id*. at pp. 518-19.  After an off the record discussion between both attorneys and the judge, the trial continued.  *Id*.

After his conviction, Petitioner appealed to the New York State Appellate Division, Third Department, on the grounds that, *inter alia*, he was denied his constitutional right to the counsel of his choice and he was also denied his constitutional right to effective representation of counsel inasmuch as his trial attorney failed to object to the admission of Sgt. Gecewiz's testimony concerning Petitioner's alleged confession on the grounds that Petitioner was given no notice of such evidence as required by New York Criminal Procedure Law § 710.30.  Def.-App.'s State Ct. Br. & Appendix at pp. 4-10.

## II.  DISCUSSION

### A.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)  ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones*

*v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003).  The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B.  Right to Counsel of Choice

The Constitution guarantees a criminal defendant the right to retain counsel of his choice. *Chandler v. Fretag*, 348 U.S. 3, 9 (1954).  However, that right is not absolute.  For example, an indigent defendant cannot "insist on representation by an attorney he cannot afford[.]" *Wheat v. United States*, 486 U.S. 153, 159 (1988).  Furthermore, the Supreme Court has held that trial courts retain "wide latitude in balancing the right to counsel of choice . . . against the demands of its calendar." *United States v. Gonzalez-Lopez*, 126 S.Ct. 2557, 2565-66 (2006); *see also Morris v. Slappy*, 461 U.S. 1, 11 (1983) (stating that "broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of

a justifiable request for delay' violates the right to the assistance of counsel.") (quoting *Ungar v. Sarafite*, 376 U.S. 575, 598 (1964)).

In the Second Circuit, it is settled law that "[o]n the eve of trial, just as during trial, a defendant can only substitute new counsel when unusual circumstances are found to exist, such as a complete breakdown of communication or an irreconcilable conflict." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997) (citing *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972)). Petitioner must therefore demonstrate good cause for the substitution of assigned counsel. However, it is incumbent upon the trial court, upon receipt of a "seemingly substantial" complaint from a defendant about his counsel, to inquire into the reasons for the dissatisfaction. *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir. 1981).

In favor of his motion to adjourn the proceeding in order to retain new counsel, Petitioner stated that he had only received discovery materials a week earlier and he was not able to maintain meaningful contact with his assigned counsel because he was housed in a federal prison located a considerable distance from the trial location. Trial Tr. at pp. 6-8. The trial court did not make any further formal inquiry into Petitioner's complaints. *Id*. Rather, the trial court asked appointed counsel if he was ready to proceed, to which he responded that aside from his inability to locate a certain witness, he was ready to proceed to trial. *Id*. at p. 8.

The record indicates that there was no actual breakdown of the communication between the appointed attorney and Petitioner. The appointed counsel indicated he consulted with Petitioner about the trial a week before the trial began. *Id*. at p. 13. At trial, Petitioner cooperated during his direct examination and conferred with his counsel on numerous occasions. *See*, *e.g*., *id*. at pp. 11, 15, 35, 36, 38. For his part, the appointed attorney was intimately familiar with both the facts and

the law of the case.  *See generally* Trial Tr.  In addition, appointed counsel's willingness to continue to represent Petitioner after his motion to retain new counsel was denied undermines any assertion that there was an irreconcilable breakdown in communication.  Thus, beyond Petitioner's conclusory allegations, there is no evidence of any significant breakdown in communication between Petitioner and his counsel.

Although the trial court did not inquire further into the reasons for Petitioner's dissatisfaction, when the "reasons [an accused complains about his counsel] are made known to the court, the court may rule without more."  *McKee v. Harris*, 649 F.2d at 934 (quoting *Brown v. United States*, 264 F.2d 363, 369 (2d Cir. 1959) (Burger, J. concurring in part)).  In this case, Petitioner stated plainly why he desired to retain different counsel, and after consulting Petitioner's counsel, the trial court rejected his request.  We note that beyond the alleged difficulties in communication caused by his remote location, Plaintiff did not express any concern about his counsel's ability to present an adequate defense nor any other conflict that might have stymied an effective defense.

Furthermore, because Petitioner suffered no harm, the trial court's failure to make a formal inquiry does not constitute a sufficient basis for granting a writ.  *McKee v. Harris*, 649 F.2d at 933 ("Where the failure to inquire causes the defendant no harm, that procedural irregularity cannot of itself be a basis for granting the writ.").

In sum, since good cause did not exist for the substitution of new counsel, we cannot find that the trial court's rejection of Petitioner's request constituted an unreasonable application of Federal law.  It is therefore recommended that the Petition be **denied** as to this claim.

### C.  Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a *habeas* petitioner must show 1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) prejudice, i.e., that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002) (citing *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[1]  Moreover, to establish that his counsel's conduct was objectively unreasonable, a petitioner must demonstrate that his counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court has held that federal district courts need not address both components if a petitioner fails to establish either one.  *Strickland v. Washington*, 466 U.S. at 697.  In particular, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Id*.

In the case at bar, Petitioner claims he was denied effective assistance of counsel when his appointed counsel failed to object to the admission of Sgt. Gecewiz's testimony regarding Petitioner's alleged confession in the absence of prior notice that such evidence would be proffered. Pet. at ¶ 12.  Sgt. Gecewiz testified that following the altercation, he asked Petitioner what the altercation was about, to which Petitioner responded, "they went after one of my dogs."  Trial Tr. at pp. 517-18.  Under New York Criminal Procedure Law, "[w]henever the people intend to offer

---

[1] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'"  529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

at a trial [] evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." N.Y. CRIM. PROC. L. § 710.30(1) ("CPL"). Thus, Petitioner's attorney had a colorable basis on which to object to the prosecution's failure to give notice as required by CPL § 710.30.

Notwithstanding counsel's failure to object, Petitioner did not suffer any prejudice as a consequence. At trial, there was overwhelming evidence presented of Petitioner's guilt. The testimony adduced revealed that the victim was severely cut with a razor blade. A correctional officer arriving at the scene of the altercation in the prison library observed Petitioner with his hands in the back of his pants. Trial Tr. at pp. 404-06. After Petitioner was apprehended, a strip search revealed grease in his underwear. *Id*. An x-ray later revealed that Petitioner had secreted a razor blade in his anus, which he eventually removed himself. *Id*. at pp. 439-44. Finally, the victim of the crime positively identified Petitioner as the person who slashed his arm. *Id*. at pp. 356-57.

Even if Petitioner's statement "they went after one of my dogs" had not been introduced, there is not a reasonable probability that the outcome of the proceeding would have been any different. Petitioner's claim must therefore fail under the second prong of the *Strickland* test, and for that reason we recommend that his Petition on this claim be **denied**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   March 26, 2008
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge